# EXHIBIT 1

IN THE CIRCUIT COURT FOR THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

| | |
|---|---|
| CEP America, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| BLUE CROSS BLUE SHIELD OF FLORIDA, INC. d/b/a FLORIDA BLUE, | ) Civil Action No. _____ |
| Defendant. | ) |

## COMPLAINT

Plaintiff, CEP America, LLC ("CEP"), by and through undersigned counsel, files this Complaint against Defendant, Blue Cross Blue Shield of Florida, Inc, d/b/a Florida Blue ("Florida Blue"), and alleges as follows:

**I.     INTRODUCTION**

1. Florida Blue orchestrated a systematic scheme to underpay CEP for out-of-network emergency medical services provided to Florida Blue's members and insureds. CEP delivered these services in compliance with federal and Florida law, which mandates CEP's rendering of emergency care regardless of insurance status. Florida Blue accepted the benefit of CEP's provided emergency services, discharged its emergency care coverage and benefits obligations to its members and insureds, and then executed a deliberate, uniform, and unlawful underpayment strategy against CEP.

2. CEP seeks compensation for damages caused by Florida Blue's persistent and systematic failure to fairly reimburse CEP for out-of-network emergency services rendered from 2023 to the present to members and insureds of Florida Blue's commercial health plans (the

1

4903-2016-9338

"Disputed Claims").[1] These claims were adjudicated as covered and payable, yet Florida Blue reimbursed them at rates far below CEP's billed charges and the usual and customary charges for similar services in the community.

3. This dispute concerns the reimbursement rate at which Florida Blue paid and how Florida Blue calculated that reimbursement rate for the Disputed Claims. This is not a dispute on CEP's *right* to receive reimbursement. Additionally, this dispute does not include any Disputed Claims for which benefits were denied based on coverage determinations. Thus, there is no dispute as to whether CEP was *entitled* to payment for the Disputed Claims.

4. This dispute does not challenge any coverage determination under any health plan that may be subject to the Employee Retirement Income Security Act of 1974, the Federal Employees Health Benefits Act, as amended, 5 U.S.C. § 8901, *et. seq*. or the federal No Surprises Act.[2] Instead, this dispute challenges only Florida Blue's persistent and systematic failure to fairly reimburse CEP for out-of-network emergency services under Florida law.

---

[1] To preserve patient confidentiality, CEP will provide a list of the Disputed Claims at issue in this lawsuit to Florida Blue's counsel via encrypted electronic transmission and, if necessary, will file with the Court upon the entry of an appropriate protective order.

[2] As of January 1, 2022, the federal government implemented a new, non-exclusive mechanism for resolving certain out-of-network claims, known as the "No Surprises Act" or the "NSA." *See* 42 U.S.C. § 300gg-111. The NSA provides for an independent dispute resolution process for disputed out-of-network claims. *Id*. However, the NSA did not preempt state law that addresses out-of-network reimbursement. *Id*. at § 300gg-111(a)(3)(H), (I). Accordingly, the NSA provides that disputes over reimbursement amounts for out-of-network emergency services claims may be resolved (a) through a state's specified state law process, and (b) *if* no such process is available, then through the NSA's independent dispute resolution process. *Id*. at § 300gg-111(a)(3)(K) (emphasis added). Prior to January 1, 2022, Florida enacted laws which established a methodology for determining the rate of reimbursement for out-of-network claims. Specifically, Fla. Stat. Ann. § 641.513 addresses HMO claims, while Fla. Stat. Ann. § 627.64194 addresses all other health insurance (*i.e.* PPO) claims. This lawsuit does not include any claims for which the out-of-network reimbursement rate was determined by an independent dispute resolution entity pursuant to the NSA's independent dispute resolution process.

5. Florida Blue's conduct as alleged herein is not an isolated error. It is a calculated business practice designed to slash payments, inflate profits, and disregard its plan obligations under applicable law.

6. Florida Blue's unlawful conduct not only results in it being unjustly enriched, it also violates unequivocal Florida law. Sections 627.64194 and 641.513 of the Florida Statutes require insurers to reimburse out-of-network providers for emergency services at the lesser of the provider's billed charges or the usual and customary charges for similar services in the community. Florida Blue ignored these statutory mandates and implemented a systematic reimbursement methodology that deprives CEP of fair compensation for lifesaving care.

7. CEP brings this action to recover the amounts Florida Blue unlawfully withheld and obtain declaratory relief to prevent Florida Blue from continuing its unlawful practices.

## II.   PARTIES

8. CEP is organized under the laws of Delaware. CEP provides emergency physician care providers to hospital emergency departments throughout Florida, including Duval County.

9. Florida Blue is a for-profit Florida corporation with a principal place of business in Duval County, Florida. Florida Blue is licensed by the Florida Office of Insurance Regulation to issue or insure health insurance plans in Florida.

## III.   JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to Fla. Stat. Ann. § 26.012(2) because this dispute involves an amount in controversy in excess of $50,000, exclusive of interests, costs, and attorney's fees. Fla. Stat. Ann. § 26.012(2).

11. Florida Blue is a Florida corporation which is engaged in substantial activity within Florida and maintains offices in Florida, including Duval County.

12. Pursuant to Fla. Stat. Ann. § 47.051, venue is proper in the Fourth Judicial Circuit for Duval County, Florida, because CEP's causes of action against Florida Blue accrued in Duval County as, without limitation, CEP's Disputed Claims were generated and issued to Florida Blue in Duval County and Florida Blue's payments for the Disputed Claims were due in Duval County. Fla. Stat. Ann. § 47.051.

## IV.  FACTS

### A. Brief Overview of Managed Care Economics.

13. Health care reimbursement is complex, but in its simplest terms, it depends on three sources: uninsured patients, government programs, and commercial insurance. This is known as a "payor mix." Uninsured patients often generate no payment for health care providers, resulting in charity care. And Medicare and Medicaid often reimburse below cost. So, health care providers generally rely on commercial payors to sustain operations, recruit qualified physicians, and make a satisfactory margin. Ultimately, a health care provider's goal is simple: maintain business operations to support the continuing provision of lifesaving and life sustaining health care services.

14. Unlike health care providers, commercial health insurance companies like Florida Blue are not health care companies. They are financial services companies. They sort members into risk pools using data and actuarial models, price premiums based on risk, and then invest those premium dollars for profit. After collecting and investing members' money, insurers routinely underpay providers' claims—often on specious grounds—to avoid liquidating investments to pay benefits. They bet that the cost-benefit ratio will deter providers from litigation. The business model is simple: figure out how not to pay anyone so directors, officers, and shareholders continue to receive dividends from the "inside build-up" of premium-payment investment strategies. Florida Blue's market dominance emboldens it to strong-arm providers into accepting less than they are

4

owed, and its systematic underpayment practices serve as a warning to others: Be thankful we pay you anything at all—you could be next. This strategy drives administrative costs such as billing, payment disputes, and litigation, to consume more than a third of all health care expenditures in the United States.

15. Commercial payors generally operate with two categories of providers: in-network and out-of-network. In-network providers agree to discounted rates in exchange for access to the payor's membership base, predictable reimbursement, and streamlined administration. In these circumstances, providers agree to accept discounted rates as payment in full for their services (plus the patient's cost-sharing amount as governed by their plan). Generally, providers are willing to offer greater discounts to commercial payors with larger membership or higher steerage. These are critical factors in allowing providers to spread their fixed costs over a high volume of predictable care. Ultimately, these types of negotiated exchanges drive managed care economics.

16. The economics involving out-of-network commercial health care services are much different than those governing in-network health care services. Out-of-network providers have no contract with the payor. They receive no steerage, no administrative benefits, and no guaranteed volume. Yet they must treat emergency patients regardless of insurance status under Florida law and the Emergency Medical Treatment and Active Labor Act ("EMTALA"). Fla. Stat. § 395.1041; 42 U.S.C. § 1395dd.

17. Because out-of-network providers lack contractual benefits, they expect reimbursement at or near their full billed charges. This expectation reflects economic reality. If out-of-network rates matched in-network rates, payors would have no incentive to negotiate contracts, destabilizing managed care.

**B. Florida Blue Fails to Reimburse CEP at Usual and Customary Amounts.**

18. Although CEP prefers to be an in-network provider, not all commercial payors are willing to partner with CEP in this way, including Florida Blue. As a result, CEP is an out-of-network provider with Florida Blue.

19. As stated above, federal and Florida law require CEP to provide emergency stabilization and necessary treatment regardless of a patient's ability to pay, insurance status, or whether the physician is out-of-network with the patient's health insurance coverage, including commercial coverage issued by Florida Blue. Fla. Stat. § 395.1041; 42 U.S.C. § 1395dd.

20. CEP upheld its statutory obligations and provided valuable, medically necessary emergency services to Florida Blue's members as required by law. CEP submitted claims timely and properly. Florida Blue adjudicated these claims as covered and payable. But Florida Blue then executed a systematic underpayment strategy, reimbursing CEP at rates far below its billed charges and far below the usual and customary charges for similar services in the community.

21. Florida Blue received the benefit of CEP's provision of emergency services to Florida Blue's members. Florida Blue's obligation to make emergency services available to its members is governed by law and by Florida Blue's contracts with its members.[3] Florida Blue issued policies to its members requiring coverage and fair reimbursement of out-of-network emergency care. Florida Blue receives premium payments for member enrollment and coverage in the health plans underlying the Disputed Claims in exchange for covering and paying for out-of-network emergency care.

---

[3] Florida Blue issues health insurance contracts to its members setting forth the member rights to insurance benefits provided through Florida Blue's health plans, including Florida Blue's coverage and reimbursement obligations for emergency services such as those provided by CEP at issue.

22. CEP enabled Florida Blue to satisfy its obligation of making covered, out-of-network emergency care available. Effectively, Florida Blue used CEP's services to discharge Florida Blue's obligation to provide emergency care coverage for their members. Despite the discharge of Florida Blue's coverage obligations, Florida Blue failed to pay CEP fairly for CEP's services. Florida Blue unilaterally and systematically paid CEP unreasonably low amounts for the Disputed Claims.

23. Florida Blue did not make these decisions by accident. It applied a uniform strategy to underpay CEP's claims across the board. This systematic underpayment allowed Florida Blue to slash claims costs, increase its own investment income, and market artificially low costs to other health plans. Florida Blue knew its obligations under Florida law and chose to ignore them.

24. Not only did these systematic practices unjustly enrich Florida Blue, they also violate Sections 627.64194 and 641.513 of the Florida Statutes. Fla. Stat. Ann. § 641.513(5), which is part of Florida's Health Maintenance Organization ("HMO") Act and applicable to HMOs—including Florida Blue—provides that reimbursement for emergency services by providers such as CEP, "who do[] not have a contract with the [HMO] shall be the lesser of: (a) The provider's charges; (b) The usual and customary provider charges for similar services in the community where the services were provided; or (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim."

25. Florida law further requires that insurers, including preferred provider organizations ("PPO")—like Florida Blue— reimburse out-of-network health care providers, such as CEP, for emergency services that such providers render to the insurer's members in accordance with the provisions of Fla. Stat. § 641.513(5). *See* Fla. Stat. Ann. § 627.64194(4) ("An insurer must reimburse a nonparticipating provider of services under subsections (2) and (3) as specified

7

in [§] 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy, within the applicable timeframe provided in s. 627.6131.").

26. However, Florida Blue improperly paid CEP at less than CEP's charges and substantially less than the "usual customary provider charges for similar services in the community where the services were provided." *See* Fla. Stat. Ann. § 641.513(5)(b); Fla. Stat. Ann. § 627.64194(4) (incorporating Fla. Stat. Ann. § 641.513(5)).

27. Florida Blue paid and continues to pay CEP artificially low rates, resulting in unreasonable underpayments and rejections of CEP's appeals for a fair rate of payment in violation of Florida law.

28. Florida Blue's improper, systematic payment practices against CEP violate applicable Florida laws by depriving CEP of the payments to which it is entitled and have caused, and continue to cause, CEP to suffer damages in an amount equal to the difference between the amounts paid by Florida Blue and the lesser of CEP's charges or the usual and customary provider charges for the Disputed Claims, plus the benefit of retaining that money, which are ongoing in nature.

29. Florida Blue knows that the less it pays CEP, the more Florida Blue can earn from the interest and/or investment income generated for its fully insured business. By underpaying the Disputed Claims, Florida Blue is able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them or using the results to market their services to other health plans. This earned interest and/or investment income unjustly enriches Florida Blue.

30. To the extent any administrative appeals or requirements apply to the Disputed Claims, CEP has exhausted such administrative remedies and/or such administrative remedies were, and are, futile.

4903-2016-9338

## V.     CLAIMS FOR RELIEF

### COUNT I
### Breach of Implied-in-Law Contract/Unjust Enrichment

31. Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein.

32. CEP asserts a breach of implied-in-fact contract/unjust enrichment claim, based upon CEP's separate and independent rights against Florida Blue under state law and not based on an express written contract between CEP and Florida Blue.

33. Florida Blue collects premium payments and fees for its members' and insureds' enrollment and coverage in the members' respective health plans in exchange for agreeing to properly reimburse providers, like CEP, that render medical services to Florida Blue's members and insureds.

34. In exchange for such premiums and fees, Florida Blue owes its members an obligation to pay for the covered medical services the members receive.

35. Florida Blue derives a benefit from CEP's provision of emergency medical services to its members because it is through CEP's provision of those services that Florida Blue fulfills its legal and contractual obligations to its members.

36. CEP conferred a benefit on Florida Blue by providing valuable emergency medical services to Florida Blue's members with the knowledge and/or approval of Florida Blue. More particularly, CEP conferred a direct benefit to Florida Blue by:

   a. Providing Florida Blue with access to out-of-network emergency medical services by CEP;

   b. Ensuring that Florida Blue's members have prompt and reasonable access to out-of-network emergency care services, like those CEP provided, thereby allowing Florida Blue to fulfill its obligation to its members to provide an

9

adequate number and type of provider to ensure its members have access to and receive emergency care without unreasonable delay or burden; and/or

c. Allowing Florida Blue to meet its statutory obligations to provide coverage for emergency medical services.

37. CEP also conferred a benefit on Florida Blue by providing valuable emergency services to Florida Blue's members and insured without remitting proper payment for the Disputed Claims. More particularly, Florida Blue's retainment of monies due for the Disputed Claims allowed Florida Blue to improperly earn from the interest and/or investment income generated for its fully insured business and further market savings to other health plans upon which it seeks to administer.

38. Florida Blue acknowledged, accepted, and retained the benefits conferred from CEP's provision of such medical services to Florida Blue's members.

39. Florida Blue failed to pay the reasonable fair market value of the benefit conferred upon it by CEP for the Disputed Claims. By refusing to pay CEP appropriately, Florida Blue has been unjustly enriched.

40. The circumstances are such that it would be unjust and inequitable for Florida Blue to retain the direct benefit conferred on it by CEP without paying the reasonable fair market value of same.

41. As a direct and proximate result of Florida Blue's breach of the implied-in-law contracts, CEP suffered damages in an amount to be proven at trial, plus applicable interest.

## COUNT II
### Violation of Florida Statute § 627.64194
### (against Florida Blue non-HMO Plans)

42. CEP re-alleges and restates paragraphs 1 through 30 above as if they were fully set forth herein.

43. At all times material, CEP and Florida Blue have not had a written contract between them governing the rates at which Florida Blue must reimburse CEP for its emergency services provided to Florida Blue's members of commercial plans or patients who receive their insurance from self-funded plans for whom Florida Blue provides administrative services that are not HMO plans.

44. At all times material, CEP has been a nonparticipating provider in Florida Blue's health insurance networks and thus an out-of-network provider for the Disputed Claims.

45. At all times material, CEP rendered emergent services to Florida Blue's members of commercial plans or patients who receive their insurance from self-funded plans for whom Florida Blue provides administrative services. All such emergency services were undisputedly covered services.

46. Florida Statute § 627.64194(4) requires Florida Blue to reimburse nonparticipating providers, such as CEP as an out-of-network provider, for emergency services rendered to Florida Blue's members of non-HMO commercial plans or patients who receive their insurance from self-funded non-HMO plans for whom Florida Blue provides administrative services according to the methodology set forth in Florida Statute § 641.513(5). *See* Fla. Stat. Ann. § 627.64194(4).

47. Pursuant to Florida Statute § 641.513(5), nonparticipating providers are entitled to reimbursement for services rendered in an amount equal to the lesser of "[t]he provider's charges," "[t]he usual and customary provider charges for similar services in the community where the

11

services were provided," or "[t]he charge mutually agreed by the health maintenance organization and the provider within 60 days of the submittal of the claim." Fla. Stat. Ann. § 641.513(5).

48. Florida Blue was required to pay CEP for the Disputed Claims an amount equal to the lesser of "[t]he provider's charges" or "[t]he usual and customary provider charges for similar services in the community where the services were provided," but Florida Blue significantly underpaid the Disputed Claims. See Fla. Stat. Ann. § 627.64194(4) (incorporating Fla. Stat. Ann. § 641.513(5)).

49. CEP and Florida Blue did not agree regarding charges within sixty (60) days of the submission of the Disputed Claims. See Fla. Stat. Ann. § 641.513(c) (allowing for a mutually agreed rate between the parties within 60 days of submission).

50. CEP is entitled to reimbursement from Florida Blue at the lesser of CEP's billed charges or the "usual and customary provider charges for similar services in the community where the services were provided." See Fla. Stat. Ann. § 627.64191(4) (incorporating Fla. Stat. Ann. § 641.513(5)).

51. Florida Blue reimbursed CEP for the Disputed Claims at unilaterally and unreasonably low rates which were substantially less than the usual and customary provider charges for similar services in the community where CEP rendered such services.

### COUNT III
### Violation of Florida Statute § 641.513
### (against Florida Blue HMO Plans)

52. CEP re-alleges and restates paragraphs 1 through 30 above as if they were fully set forth herein.

53. At all times material, CEP and Florida Blue have not had a written contract between them governing the rates at which Florida Blue must reimburse CEP for its emergency services

4903-2016-9338

provided to Florida Blue's members of HMO commercial plans or patients who receive their insurance from self-funded HMO plans for whom Florida Blue provides administrative services.

54. At all times material, CEP has not been a participating provider in Florida Blue's HMO health insurance networks and thus is an out-of-network provider for the Disputed Claims that are HMO-based claims.

55. At all times material, CEP rendered emergency services to Florida Blue's members of commercial plans or patients who receive their insurance from self-funded plans for whom Florida Blue provides administrative services for HMO-based plans. All such emergency services were undisputedly covered services.

56. Fla. Stat. § 641.513(5) provides that all HMOs, such as Florida Blue's HMO-based plans, must reimburse non-participating providers for emergency health care services in an amount equal to the lesser of the provider's charges, the "usual and customary provider charges for similar services in the community where the services were provided," or "[t]he charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim." Fla. Stat. Ann. § 641.513(5).

57. At all times material, CEP rendered emergency services to Florida Blue's members of HMO commercial plans or patients who receive their insurance from self-funded HMO plans for whom Florida Blue provides administrative services. All such emergency services were undisputedly covered services.

58. Florida Blue was required to pay CEP for the Disputed Claims arising from HMO-based plans in an amount equal to the lesser of "[t]he provider's charges" or "[t]he usual and customary provider charges for similar services in the community where the services were

13

provided," but Florida Blue significantly underpaid the Disputed Claims. Fla. Stat. Ann. § 641.513(5).

59.     CEP and Florida Blue did not agree regarding charges within sixty days of the submission of the Disputed Claims. Fla. Stat. Ann. § 641.513(5)(c).

60.     CEP is entitled to reimbursement from Florida Blue at the lesser of CEP's billed charges or "[t]he usual and customary provider charges for similar services in the community where the services were provided" for the Disputed Claims arising from HMO-based plans. Fla. Stat. Ann. § 641.513(5)(a–b).

61.     Florida Blue reimbursed CEP for the Disputed Claims arising from HMO-based plans at unilaterally and unreasonably low rates which were substantially less than the usual and customary provider charges for similar services in the community where CEP rendered such services.

## COUNT IV
## Declaratory Judgment

62.     CEP re-alleges and restates paragraphs 1 through 30 above as if they were fully set forth herein.

63.     At all times material, CEP has been an out-of-network provider when rendering emergency services to Florida Blue's members or patients who receive their insurance from its fully funded or self-funded plans for whom Florida Blue provides insurance and/or administrative services.

64.     At all times material, Florida Blue reimbursed CEP for out-of-network emergency services underlying the Disputed Claims at substantially less than CEP's charges and the usual and customary provider charges for similar services in the community where CEP rendered such services in violation of Fla. Stat. Ann. §§ 641.513(5) and 627.64194(4).

14

65. Florida Blue continues to reimburse CEP for emergency services at substantially less than CEP's charges and the usual and customary provider charges for similar services in the community where CEP rendered such services. Florida Blue has indicated that it intends to continue to reimburse CEP for future claims for reimbursement of out-of-network emergency services in such an unlawful manner.

66. CEP and Florida Blue expect and intend for CEP to continue to provide emergency services to Florida Blue's members or patients who receive their insurance from Florida Blue's fully-funded or self-funded plans for whom Florida Blue provides insurance and/or administrative services as an out-of-network provider.

67. Based on the foregoing allegations, there is a bona fide dispute between the parties concerning whether the rates at which Florida Blue reimburses CEP for emergency services rendered to Florida Blue's members violate Fla. Stat. Ann. §§ 641.513(5), and 627.64194(4) and concerning the rates of reimbursement to which CEP is entitled as out-of-network providers of emergency services to Florida Blue's members.

68. These are real and substantial justiciable controversies between Florida Blue and CEP concerning CEP's rights of reimbursement and whether the rates of reimbursement that Florida Blue has paid to CEP comply with Florida law.

69. These are actual, definite, concrete, and substantial controversies that require an immediate determination of CEP's rights of reimbursement and whether the rates of reimbursement that Florida Blue has paid to CEP comply with Florida law.

70. As a result of Florida Blue's actions and representations, CEP is in doubt as to its claim for such reimbursements. Declaratory relief is thus appropriate here because such judgment will serve a useful purpose in clarifying and settling the rates of reimbursement to which CEP is

entitled from Florida Blue for the emergency services CEP rendered, and continues to render, to Florida Blue's members for as long as the CEP remains out-of-network.

71. There is a bona fide, actual, present practical need for a declaration. Declaratory relief will terminate and afford relief from uncertainty, insecurity, and controversy concerning the rates at which Florida Blue must reimburse CEP for the emergency services CEP continues to render to Florida Blue's members while out-of-network.

72. All antagonistic and adverse interests relating to this declaration are parties to this action.

73. The relief sought is not merely to seek legal advice of the Court nor does CEP seek answers to questions propounded from mere curiosity.

74. CEP is consequently entitled to a declaration of their rights pursuant to Section 86.021 of the Florida Statutes. Fla. Stat. Ann. § 86.021.

## VI.    PRAYER FOR RELIEF

WHEREFORE, CEP prays for the following relief:

A. Judgment be entered against Florida Blue for damages on Counts I-III and for declaratory relief on Count IV;

B. Award CEP prejudgment and post judgment interest on the amounts overdue on the Disputed Claims; and

C. For such other, further, and general relief to which CEP may show itself entitled.

Dated: November 14, 2025

Respectfully submitted,

/s/ James V. Etscorn
James V. Etscorn
Florida Bar No. 705111
Email: jetscorn@bakerlaw.com
Secondary email: mrios@bakerlaw.com

> Daniel D. Woodruff
> Florida Bar No. 1059872
> Email: dwoodruff@bakerlaw.com
> Secondary email:
> 	lshahsailes@bakerlaw.com
> 	orlbakerdocket@bakerlaw.com
> **Baker & Hostetler LLP**
> 200 South Orange Avenue Suite 2300
> Orlando, FL 32801-3432
> Telephone: 407.649.4000
> Facsimile: 407.841.0168
>
> Joshua D. Arters (*pro hac vice forthcoming*)
> Email: jarters@polsinelli.com
> **POLSINELLI PC**
> 1500 Commerce Street, Suite 1300
> Nashville, TN 37204
> 615-252-3923
>
> *Counsel for Plaintiff*